NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2024 KA 0141

STATE OF LOUISIANA

VERSUS

MONTREY TREVELL PAIGE

Judgment Rendered: DEC 1 0 2024

* * * * * * *

On Appeal from the 21st Judicial District Court
In and for the Parish of Tangipahoa
State of Louisiana
Trial Court No. 1900133

Honorable William Scott Dykes, Judge Presiding

* * * * * * *

Scott M. Perrilloux
District Attorney
Le'Anne Malnar
Brett Sommer
Assistant District Attorneys
Livingston, Louisiana

Attorneys for Appellee
State of Louisiana

Katherine M. Franks
Madisonville, Louisiana

Attorney for Defendant/Appellant
Montrell Trevell Paige

* * * * * * *

BEFORE: GUIDRY, C.J., PENZATO, AND STROMBERG, JJ.

**PENZATO, J.**

The defendant, Montrey Trevell Paige, was charged by grand jury indictment with possession with intent to distribute a Schedule I controlled dangerous substance (heroin), a violation of La. R.S. 40:966(A) and (B)(3).[1] He initially entered a plea of not guilty. However, pursuant to a plea agreement, he subsequently pled guilty to the instant offense, as well as four additional offenses in companion cases bearing docket numbers 2101766 and 1900176.[2]

The defendant failed to appear for his scheduled sentencing, and his counsel moved to withdraw his guilty plea. When the defendant subsequently appeared for sentencing, the trial court denied the motion to withdraw his guilty plea and sentenced the defendant to forty years imprisonment at hard labor. The State then filed a habitual offender bill of information against the defendant. Following a hearing, the trial court adjudicated the defendant a fourth-felony offender, vacated the prior sentence, and sentenced him to forty years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.[3]

The defendant now appeals, designating four assignments of error. For the following reasons, we set aside the conviction, habitual offender adjudication, and sentence, and remand for further proceedings, allowing the defendant the opportunity to withdraw his guilty plea.

---

[1] In 2022, subsequent to the instant offense, the legislature revised La. R.S. 40:966(B)(3). See 2022 La. Acts, No. 671, § 1. The sentencing range for this offense is now contained in La. R.S. 40:966(B)(3)(a).

[2] The instant case bears docket number 1900133. Under docket number 2101766, the defendant pled guilty to illegal carrying of weapons while in possession of or during the sale or distribution of a controlled dangerous substance, distribution or possession with intent to distribute heroin, and possession of a firearm by a convicted felon. Under docket number 1900176, the defendant pled guilty to possession with intent to distribute marijuana with an aggregate weight of less than two and one half pounds.

[3] The trial court ordered the sentence to be served consecutively to the sentences imposed in the companion cases. Under docket number 2101766, the trial court sentenced the defendant to concurrent sentences of ten years, forty years, and twenty years on the charges therein. Under docket number 1900176, the trial court sentenced the defendant to ten years imprisonment. In total, the defendant was sentenced to ninety years imprisonment.

2

## BREACH OF PLEA AGREEMENT

In his first assignment of error, the defendant argues the trial court erred in failing to order specific performance of the plea agreement or, alternatively, in failing to set aside his guilty plea. The defendant contends the State's "failure to appear" edict was not part of the plea agreement, and he was never questioned as to whether he understood and accepted the additional term set by the State, rendering his plea constitutionally infirm.

In determining the validity of plea bargain agreements, Louisiana courts generally refer to rules of contract law, while recognizing a criminal defendant's constitutional right to fairness may be broader than his or her rights under contract law. *State v. Givens*, 99-3518 (La. 1/17/01), 776 So.2d 443, 455. The four elements of a valid contract are: (1) the parties' capacity to contract; (2) the parties' freely given mutual consent; (3) the existence of a certain, lawful object for the contract; and (4) the existence of a lawful purpose, or cause, of the contract. *State v. Rider*, 2023-0164 (La. App. 1st Cir. 11/9/23), 379 So.3d 49, 52, writ denied, 2023-01711 (La. 6/5/24), 385 So.3d 1160; see La. Civ. Code arts. 1918, 1927, 1966, and 1971. Under substantive criminal law, there are two alternative remedies available for a breach of a plea bargain: (1) specific performance of the agreement, or (2) nullification or withdrawal of the plea. The party demanding performance of a plea bargain agreement has the burden of proving its existence and the terms thereof. *Rider*, 379 So.3d at 52-53.

A valid guilty plea must be a voluntary choice by the defendant and not the result of force or threats. See La. Code Crim. P. art. 556.1. Prior to accepting a guilty plea, the trial court must personally inform the defendant of the nature of the charge to which the plea is offered, any mandatory minimum penalty, and the maximum possible penalty. The trial court must also determine whether the defendant has voluntarily and knowingly waived his right against self-incrimination,

3

his right to a jury trial, and his right to confrontation. *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969); *State v. Young*, 2020-0049 (La. App. 1st Cir. 11/6/20), 315 So.3d 904, 907, writ denied, 2020-01402 (La. 2/9/21), 310 So.3d 177. Defense counsel cannot consent to a guilty plea on his client's behalf, nor can a defendant's tacit acquiescence in the decision to plead guilty render the plea valid. Instead, the jurisprudence requires the trial court to conduct a colloquy with the defendant, on the record, to determine the guilty plea is entered with the defendant's full knowledge of its consequences. *Rider*, 379 So.3d at 53 (citing *Florida v. Nixon*, 543 U.S. 175, 187-88, 125 S.Ct. 551, 560, 160 L.Ed.2d 565 (2004)).

The withdrawal of a guilty plea is predicated on a legal cause, that is, on a showing made by a defendant that his plea bargain was constitutionally infirm, creating a legal defect that nullifies the agreement between the parties. *Young*, 315 So.3d at 907-08. A guilty plea is constitutionally infirm when it is not entered freely and voluntarily, if the *Boykin* colloquy was inadequate, or when a defendant is induced to enter the plea by a plea bargain or what he justifiably believes was a plea bargain and that bargain is not kept. A constitutionally infirm guilty plea may be set aside either by means of an appeal or postconviction relief. *Id.* at 907.

On November 16, 2021, the State and the defendant agreed the defendant would enter a guilty plea in exchange for a combined sentence of eighteen years.[4] The State further agreed not to file a habitual offender bill of information against the defendant. The trial court then conducted a colloquy with the defendant on the record to determine whether the plea was entered with the defendant's full

---

[4] In this case, the State offered a sentence of ten years, to be served concurrently with the sentences imposed in the companion cases. Under docket number 2101766, the State offered a ten-year sentence and two concurrent eighteen-year sentences, respectively, on the charges therein. Under docket number 1900176, the State offered a concurrent ten-year sentence on the charge therein. Thus, the eighteen-year sentence represented the longest sentence the defendant would be subject to under the agreement.

4

knowledge of its consequences. See *Boykin*, 395 U.S. at 242-44, 89 S.Ct. at 1712-13. The trial court advised the defendant of the nature of the charges, the mandatory minimum sentences, and the possible maximum sentences. The defendant stated he understood same. The trial court then advised the defendant of his rights under *Boykin*, which the defendant waived. The defendant subsequently entered his guilty plea.

The trial court then asked the defendant whether he was threatened or coerced to enter a plea, and the defendant responded, "Basically." Defense counsel spoke with the defendant for a few minutes regarding his answer. When the trial court asked him again, the defendant asked what the trial court meant by coercion. The trial court stated the defendant just discussed that with his counsel, to which the defendant responded he had not. The following colloquy then occurred:

> [THE STATE]: Judge, right. I don't think — I think what — he's confused by the fact that I'd be habitual offendering him. And he'd have been looking at a lot more time. And he's thinking that might be coercion. But coercion is: I have threatened you with bodily harm, or life, or taken something away from you ...
>
> [THE DEFENDANT]: Eighty years is life.
>
> [THE STATE]: Okay. I understand. But that's not a coercion. That's just a fact of law that your Judge — that your attorney and I've explained to you. I mean that's — that's what he would get on a habitual offender.
>
> THE COURT: The calculation of time is not considered coercion. We have to inform you of what you're looking at because if not, then you wouldn't be fully informed. And that's why we have to inform you of what your exposure could be.

When the trial court asked the defendant a third time whether he felt threatened or coerced to enter the plea, the defendant responded negatively. The defendant then stated he was not promised anything more lenient than the plea deal

5

offered that day. The trial court asked whether the offer was the best one given since the defendant received new charges (the charges under docket number 2101766), at which point the following discussion took place:

[THE STATE]: That's correct, Judge. But after consulting with the court and with my office, Your Honor, it has to be sentencing on [November 19, 2021].

THE COURT: Right.

[THE STATE]: That he understands if he gets in any other criminal conduct, he gets arrested even for a traffic ticket, he — he does not show up, the State of Louisiana is not going to withdraw, but we have the right to ask for the maximum amount sentence, which is going to be the forty. And the [S]tate will be filing a habitual offender if he doesn't show up Friday for sentencing and remand.

THE COURT: All right.

[THE STATE]: But right now, the offer is eighteen total.

THE COURT: All right.

The trial court asked defense counsel whether he advised the defendant of the nature of the charges and his legal and constitutional rights and whether he believed the defendant understood his advice. Counsel responded affirmatively to each question and stated he did not have any further advice for the defendant. The trial court then asked the defendant whether he had any questions, to which he responded he did not. The defendant further stated he was satisfied with his attorney's representation.

Thereafter, the following colloquy occurred:

THE COURT: So I am satisfied that the plea of guilty is voluntarily, is knowingly and intelligently made and therefore it will be accepted by the court. It's my understanding, he wants — he wishes to exercise his sentencing delay based upon the agreed stipulations that we've previously put on the record. ... So with that, all sentencing will be on

6

[November 19, 2021]. Like I said, with the stipulations that the ankle monitor is to remain, that there's no new criminal activity, and you remain at your home unless some emergency arises that involves you specifically. All right?

**[THE DEFENDANT]**: Yes, sir.

When the trial court asked whether anything else needed to be put on the record, the State responded: "No. He — he understands that he has to be here, no criminal conduct, ankle bracelet on, or I'm able to ask for the forty years and file a habitual offender. So, he just needs to show up, be ready for remand."

Three days later, on November 19, 2021, the defendant failed to appear for sentencing. That same day, his counsel filed a motion to withdraw the defendant's guilty plea, arguing the plea colloquy demonstrated his pleas were accepted unintelligently and unknowingly. Specifically, the motion stated that on two separate occasions, when questioned by the trial court whether he was threatened or coerced to enter a plea, the defendant responded affirmatively. Thus, the defendant contended that "because of the immense pressure to reconsider his plea options, [he] did not recall being advised of all of his rights enunciated in *Boykin*[,]" nor did he "recall being apprised by the [c]ourt of the possible sentences for the offenses for which he plead [sic] guilty to."

Neither the defendant nor his counsel appeared for the hearing on the motion to withdraw the defendant's guilty plea, which the trial court then dismissed. The defendant re-urged the motion on February 27, 2023, asserting the same grounds alleged in the written motion; namely, his plea was not voluntary and knowing because he twice stated during the plea colloquy he felt coerced to plead guilty and was very reluctant to take the plea deal. The trial court denied the motion and stated the defendant was not coerced; rather, he did not understand the definition of coercion. The trial court found the defendant knowingly and intelligently accepted the plea agreement "and then didn't want to face the time that he was facing then."

7

The defendant noted his objection without reasons. The trial court then imposed the maximum sentence on the instant offense, forty years at hard labor, to run consecutively to the sentences imposed on the other offenses.

Thereafter, the State filed a habitual offender bill of information against the defendant alleging he was a fourth-felony habitual offender. The trial court adjudicated him a fourth-felony offender, vacated the prior sentence, and sentenced him to forty years imprisonment without benefit of probation, parole, or suspension of sentence, to run consecutive to all other sentences.

On appeal, the defendant does not repeat the arguments made in his written motion to withdraw his guilty plea or at the motion hearing, which was filed and argued prior to his sentencing. Instead, he argues his guilty plea was not knowing and voluntary because after he entered his guilty plea, the State set an additional term regarding the consequences of his failure to appear at sentencing; namely, the State would seek the maximum sentence and file a habitual offender bill of information against him. The defendant further claims the trial court failed to inquire whether he understood or accepted such term. Thus, he contends the State breached the plea agreement, and this court should vacate the sentence and remand the matter to the trial court for specific performance of the agreement or to allow him the opportunity to withdraw his guilty plea.

At the outset, we note a defendant ordinarily may not raise an argument for the first time on appeal. See La. Code Crim. P. art. 841(A). However, the Louisiana Supreme Court has consistently permitted a constitutionally infirm guilty plea to be withdrawn after sentencing by way of appeal or post-conviction relief. *State v. Dixon*, 449 So.2d 463, 464 (La. 1984). Further, courts have reviewed claims of constitutionally infirm pleas on appeal even in the absence of a motion to withdraw a guilty plea. See *State v. West*, 97-1638 (La. App. 1st Cir. 5/15/98), 713 So.2d 693, 695; *State v. Gamboa*, 2022-806 (La. App. 3d Cir. 9/13/23), 370 So.3d 1260, 1266,

8

writ denied, 2023-01376 (La. 4/9/24), 382 So.3d 842; *State v. Hebert*, 2002-884 (La. App. 5th Cir. 12/30/02), 838 So.2d 30, 31-32. As the defendant in this case did file a motion to withdraw his guilty plea, we will address his claim that his plea was constitutionally infirm based on the additional term set by the State.[5] See *State v. Casson*, 2007-1081 (La. App. 3d Cir. 2/4/09), 2 So.3d 1246, 1247-48, writ denied, 2009-0501 (La. 11/20/09), 25 So.3d 785 (court vacated original judgment finding defendant precluded from asserting new ground for withdrawal of guilty plea, noting the issues raised on appeal are "'core constitutional rights of the defendant-they are not "trial errors" that are normally waived by failing to file a contemporaneous objection.'").

The defendant herein relies on *Rider* in arguing his conviction, habitual offender adjudication, and sentence should be set aside and the case remanded so he has the opportunity to withdraw his guilty plea. In *Rider*, the defendant initially pled not guilty but later pled guilty pursuant to a plea agreement. *Rider*, 379 So.3d at 51. During the *Boykin* examination, defense counsel stated the defendant would enter guilty pleas "as per our pretrial discussions." *Id.* at 52. After the plea colloquy concluded, the State advised the defendant it would file a habitual offender bill of information against him if he failed to appear for sentencing. Defense counsel stated he understood. *Id.* When the defendant failed to appear for sentencing, the State filed a habitual offender bill against him. *Id.* The defendant then moved to withdraw his guilty pleas, which the trial court denied. *Id.* at 51. The trial court adjudicated the defendant a fourth-felony offender and sentenced him to twenty years in prison without benefits. *Id.* On review, this Court set aside the defendant's conviction,

---

[5] In *State v. West*, 2018-0868 (La. App. 1st Cir. 5/31/19), 277 So.3d 1213, 1217, the defendant filed a motion to withdraw his guilty plea but asserted different grounds on appeal. Thus, this court found the defendant's claim was not properly before the court but ultimately analyzed the merits, finding the defendant was not entitled to withdraw his plea. *Id.* However, we find the cases relied on in *West* to support the procedural bar to the defendant's claim do not apply to a motion to withdraw a guilty plea.

habitual offender adjudication, and sentence and remanded the case to the trial court to allow the defendant the opportunity to withdraw his guilty plea. *Id.* This Court found the plea colloquy did not establish the defendant consented to or understood the consequences of the additional condition the State attempted to impose after the defendant pled guilty. *Id.* at 53. Further, the defendant signed a written plea agreement, which specifically provided for no additional conditions other than those contained in the plea colloquy. *Id.* Thus, this Court found the State unilaterally changed the terms of the agreement after the defendant entered his guilty plea, thereby rendering the plea invalid. *Id.*

In opposition, the State argues that because the defendant was aware of what would occur should he fail to appear for sentencing, he should not be allowed to withdraw his guilty plea. The State contends this case is distinguishable from *Rider* because in *Rider*, the defendant signed a written plea form which provided that no additional understandings, promises, or conditions were entered into other than those contained in the plea colloquy. The State further argues that in *Rider*, unlike in the present case, the failure to appear edict was added after the defendant entered his guilty plea. The State argues that this case is similar to *State v. Stewart*, 2003-976 (La. App. 5th Cir. 12/20/03), 862 So.2d 1271, 1276-77, wherein the Fifth Circuit Court of Appeal upheld an increased sentence after the defendant failed to appear at his previously set sentencing date. In *Stewart*, 862 So.2d at 1276, the trial court specifically asked the defendant if he understood that if he did not show up for sentencing, his sentence would be different and he could receive the maximum sentence, to which the defendant replied that he did. The Fifth Circuit found the transcript of the plea colloquy clearly showed the defendant was informed of his rights and the consequences of his plea, and that the plea was entered into knowingly and voluntarily.

10

The record in this case indicates that after the defendant entered his guilty plea, but before the trial court accepted the plea, the State put on the record that if the defendant did not appear for his sentencing, the State would have the right to ask for the maximum forty-year sentence and would file a habitual offender bill. The trial court asked the defendant if he had any questions, to which the defendant answered, "No. sir." The trial court accepted the defendant's plea and indicated its understanding that the defendant wished to exercise the sentencing delay "based upon the agreed stipulations that we've previously put on the record."[6] The trial court then advised the defendant his sentencing was set for November 19, 2021, "with the stipulations that the ankle monitor is to remain, that there's no new criminal activity, and you remain at your home[.]" After the trial court asked, "All right[,]" the defendant replied, "Yes, sir."

Thus, while the transcript of the plea colloquy shows the defendant acknowledged the stipulation that the ankle monitor was to remain, there would be no new criminal activity, and he was to remain at home, there is no acknowledgment by the defendant that he consented to or understood that if he did not appear for his sentencing, the State would have the right to ask for the maximum forty-year sentence and would file a habitual offender bill. Unlike in *Stewart*, the trial court in this case did not ask the defendant if he understood that his sentence would be different if he did not show up for sentencing. There is no evidence the defendant agreed to the maximum sentence or the filing of a habitual offender bill if he failed to appear for sentencing. The defendant's failure to ask questions or any other tacit acquiescence in the decision to plead guilty cannot render the plea valid. See *Rider*, 379 So.3d at 53.

---

[6] We note that the transcript does not reflect that the **defendant** agreed to the condition set forth by the State that if the defendant did not appear for sentencing, it would ask for the maximum sentence and file a habitual offender bill. The only response to that statement was from the trial court, which responded, "All right."

11

Defendant's first assignment of error has merit.[7] Because there was no existing plea agreement providing for the maximum sentence or the filing of a habitual offender bill, there was no plea agreement for which to demand specific performance. Accordingly, we set aside the defendant's conviction, habitual offender adjudication, and sentence, and remand the case for further proceedings, allowing the defendant the opportunity to withdraw his guilty plea.

**CONVICTION, HABITUAL OFFENDER ADJUDICATION, AND SENTENCE SET ASIDE; REMANDED FOR FURTHER PROCEEDINGS TO ALLOW THE DEFENDANT THE OPPORTUNITY TO WITHDRAW HIS GUILTY PLEA.**

---

[7] Based upon our disposition of this assignment of error, we pretermit consideration of the defendant's remaining assignments of error challenging the habitual offender adjudication and sentence.